[No. 60719-2.    En Banc.    June 30, 1994.]

THE STATE OF WASHINGTON, *Petitioner*, v. RUDELL G. CANTRELL, *Respondent*.

184

*H. Steward Menefee, Prosecuting Attorney for Grays Harbor County,* and *David B. Trefry, Deputy,* for petitioner.

*John M. Wolfe* of *Public Defender's Office,* for respondent.

ANDERSEN, C.J. —

## FACTS OF CASE

The question presented in this case is whether a police officer must obtain the consent of both the passenger and the driver, where both have approximately equal control of an automobile, before using consent as a basis for a warrantless search of the vehicle.

In our order accepting review of this case, we limited review to "the issue whether the search of the automobile that respondent was driving can be justified by his passenger's consent." Our sole reason for granting review was to determine whether the rule announced in *State v. Leach,* 113 Wn.2d 735, 782 P.2d 1035 (1989) should be extended to the search of motor vehicles.[1]

---

[1]*State v. Leach,* 113 Wn.2d 735, 744, 782 P.2d 1035 (1989) involved the search of business premises. The majority there held: "Where the police have obtained consent to search from an individual possessing, at best, equal control over the

The facts necessary for our review of this issue are as follows.

Defendant Rudell G. Cantrell was found guilty of misdemeanor possession of marijuana and felony possession of methamphetamine. The evidence upon which the convictions were based was discovered by a Washington State Patrol trooper during a search of the automobile the Defendant was driving.

In June 1990, Defendant and a friend, Ingo Schweitzer, were traveling from California up the West Coast. Both men were college students. The motor vehicle they were traveling in belonged to the parents of Mr. Schweitzer. The Defendant and Mr. Schweitzer were using the vehicle with the owners' knowledge and permission.

By June 28, 1990, they had reached the state of Washington. A Washington State Patrol trooper working in Pacific County testified that radar showed the Schweitzer vehicle was traveling at a speed of 70 m.p.h. in a 55 m.p.h. zone. The trooper stopped the vehicle and cited Defendant, who was driving, for the speeding violation. During the stop, the trooper learned that the vehicle belonged to the parents of the passenger, Mr. Schweitzer.

After Defendant signed the citation, the trooper asked Mr. Schweitzer and Defendant Cantrell if they had any open containers of alcohol or other contraband in the vehicle. They responded that they had some unopened bottles of alcohol. Because the trooper "was basically curious to see if they were telling the truth" and because he "felt they had something in the vehicle that they didn't want me to know about", the trooper asked Mr. Schweitzer for permission to search the vehicle. The trooper testified that it was his "standard procedure" to ask for a consent to search in approximately 50 to 75 percent of the traffic stops he made. He explained that he asked for consents whenever he felt

premises, that consent remains valid against a cohabitant, who also possesses equal control, only while the cohabitant is absent. However, should the cohabitant be present and able to object, the police must also obtain the cohabitant's consent."

there may have been something in the vehicle that the person should not have had.

Mr. Schweitzer was handed a written consent form. The trooper asked Mr. Schweitzer to read the form, and explained that the form was a consent to search his vehicle. The trooper also told Mr. Schweitzer that he was looking for any type of contraband or open containers of alcohol. Mr. Schweitzer then read the form and signed it. The trial court determined that Mr. Schweitzer understood and voluntarily signed the form and that the form was clear that he could have refused consent. Defendant Cantrell was not asked to sign a similar consent form and testified that he did not know that the trooper was planning to search the vehicle, but Cantrell made no objection when the officer searched the vehicle. The search resulted in the arrest of both men for possession of marijuana, paraphernalia, and methamphetamine.

The trial court denied Defendant's motion to suppress, holding that Mr. Schweitzer had authority to consent to the search of his parents' vehicle without the additional consent of Defendant Cantrell. Defendant Cantrell was subsequently found guilty.

The Court of Appeals reversed the conviction. *State v. Cantrell*, 70 Wn. App. 340, 853 P.2d 479, *review granted*, 122 Wn.2d 1022 (1993). The Court of Appeals held in part: (1) *State v. Leach*, 113 Wn.2d 735, 782 P.2d 1035 (1989) requires police to obtain the consent of all persons possessing approximately equal control over a vehicle before searching a vehicle without a warrant; and (2) even if the consent was otherwise found to be valid, the fact that the trooper here obtained the consent during an illegal detention following the end of the valid traffic stop tainted the consent, making the search unlawful.

The State petitioned for review only on the first holding. Accordingly, we do not review the second holding and the result of the Court of Appeals decision reversing the conviction remains unchanged. We do, however, disapprove of the conclusion of the Court of Appeals that the rule announced in *Leach* applies to the search of motor vehicles.

Thus, a single issue is presented.

## ISSUE

For a valid consent search of an automobile, must police obtain the consent of all occupants who have approximately equal control over the vehicle before police may conduct a search of the automobile without a warrant?

## DECISION

CONCLUSION. The voluntary consent to search a motor vehicle, given by a person with common authority over it, supports a search of the vehicle and evidence so discovered can be used against a nonconsenting occupant of the vehicle. We decline to extend the holding in *Leach* to motor vehicle search cases.

Initially it is important to note two facets of this case. First, the Defendant did not object to the search and, therefore, the issue of whether consent by a co-occupant remains valid in the face of another occupant's *objection* is not before the court.[2] Second, the Defendant was a permissive driver, and not a mere passenger, so whether passengers have a reasonable privacy expectation in a vehicle or its contents with the exception of their own belongings is also not before the court.[3]

■ Generally, a warrantless search is illegal unless it falls within one of the exceptions to the warrant requirement.[4] Consent to search by one with authority over the place or thing to be searched is a well-recognized exception to the warrant requirement.[5]

---

[2]We recognize there is a split of authority on this question and since the facts here do not present the issue, we do not reach it. *See* 3 Wayne R. LaFave, *Search and Seizure* § 8.3(d), at 248-53 (2d ed. 1987); § 8.3, at 68-69 (Supp. 1994); Robert F. Utter, *Survey of Washington Search and Seizure Law: 1988 Update*, 11 U. Puget Sound L. Rev. 411, 558 (1988).

[3]We note that the United States Supreme Court has previously held that a passenger in an automobile does not necessarily have an expectation of privacy in all parts of the car. *Rakas v. Illinois*, 439 U.S. 128, 148-49, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978). However, what the reasonable expectation is of a mere passenger in a motor vehicle is not presented here because the Defendant was the driver and a permissive user of the automobile.

[4]*E.g., State v. Hastings*, 119 Wn.2d 229, 233-34, 830 P.2d 658 (1992).

[5]1 John W. Hall, Jr., *Search and Seizure* §§ 8:1-8:5, at 382-87 (2d ed. 1991); *Hastings*, 119 Wn.2d at 234.

The consent exception often arises when a third person, and not the ultimate defendant, gives the consent to search. Under appropriate circumstances, warrantless searches may be based upon the consent of third parties and evidence discovered during such searches can be used against a non-consenting defendant.[6] Generally, whether such consent is valid depends on the voluntariness of the consent and on whether the consenting party has common authority over the place or thing to be searched.[7]

There is no question here that Mr. Schweitzer's consent was voluntary. In fact, he was warned in writing that he had the right to refuse to consent to the search.[8] In this case, Mr. Schweitzer was literate, educated and signed a consent card which informed him he had the right to refuse permission to search and, hence, no one argues that the consent was involuntary.[9]

There is also no question in this case that Mr. Schweitzer had the authority to consent to a search of his parents' car. Common authority rests on the mutual use of the property by persons generally having joint access or control.[10] Generally, the borrower of a car may consent to a search.[11] Here, it is not disputed that the passenger (the owners' son) had sufficient control to consent to a search of the vehicle. The only question, then, is whether this court's decision in *Leach* should be extended to apply to searches of motor vehicles.

In *United States v. Matlock*, 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974), the police arrested the suspect in the yard of a home he shared with others. After his arrest,

---

[6]Utter, at 558.

[7]Hall § 8:1, at 382-83.

[8]*See Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973).

[9]*See State v. Shoemaker*, 85 Wn.2d 207, 212, 533 P.2d 123 (1975).

[10]*United States v. Matlock*, 415 U.S. 164, 171 n.7, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974); *Hastings*, 119 Wn.2d at 239-40 (Utter, J., concurring).

[11]Hall § 8:47, at 449, and cases cited therein.

they asked the woman he lived with if they could search the home and she consented. The Court held that the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared.[12]

In *Leach*, a person with common authority consented to the search of business premises, but the defendant (co-occupant), who also was present at the premises at the time of the search, was not asked for his consent. There was no evidence that Leach's consent to search was sought or that he objected to the search. This court, in a sharply divided opinion, held that when a *"cohabitant* (is) present and able to object, the police must also obtain the cohabitant's consent." (Italics ours.)[13] The *Leach* dissent criticized the majority because it relied upon cases in which the co-occupant/ defendant was present and *objecting* to the search and the majority extended these cases to the situation where the cohabitant was present but *not* objecting. The dissent in *Leach* also pointed out that the majority relied on cases which involved privacy interests in homes, and not other premises, and opined that the majority unreasonably extended the protections of the home to nonresidential property.

The basic issue before the court here is whether the *Leach* rule should be extended to searches of vehicles. The third party consent cases turn on the suspect's reasonable expectation of privacy. If the suspect has willingly allowed another person common authority over the place or thing, then he or she runs the risk that the other will expose it to another person.[14] Both *Leach* and *Matlock* focus on the reasonable expectation of privacy when considering the issue of a third person's authority to consent to a search.[15]

[12]*Matlock*, 415 U.S. at 170.

[13]*State v. Leach*, 113 Wn.2d 735, 744, 782 P.2d 1035 (1989).

[14]Hall § 8:6, at 391.

[15]*Leach*, 113 Wn.2d at 739; *Matlock*, 415 U.S. at 171 n.7.

■ While there is a privacy interest in an automobile,[16] the interest does not rise to the level of a person's expectation of privacy in a residence.[17] There is less expectation of privacy in an automobile than in either a home or an office.[18] Since a person enjoys a lesser expectation of privacy in a vehicle than in an office or a home, we decline to extend the rule enunciated in *State v. Leach*, 113 Wn.2d 735, 782 P.2d 1035 (1989) to vehicle searches. No adequate independent state grounds are advanced in this case to support extending the *Leach* rule to motor vehicles,[19] and, for the reasons which follow, such a result is not mandated by federal law.

The Court of Appeals decision in this case can be read to require that an officer obtain each occupant's permission before a search of a vehicle can be conducted. Such a conclu-

---

[16]*Seattle v. Mesiani*, 110 Wn.2d 454, 755 P.2d 775 (1988).

[17]*State v. Stroud*, 106 Wn.2d 144, 167, 720 P.2d 436 (1986) (Durham, J., concurring) (diminished expectation of privacy in an automobile); Robert F. Utter, *Survey of Washington Search and Seizure Law: 1988 Update*, 11 U. Puget Sound L. Rev. 436 (1988); *Rakas v. Illinois*, 439 U.S. 128, 148, 149 n.15, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978) (motor vehicles are not to be treated identically with homes for Fourth Amendment purposes).

[18]*State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980) (citing *South Dakota v. Opperman*, 428 U.S. 364, 367-68, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976); *Cardwell v. Lewis*, 417 U.S. 583, 41 L. Ed. 2d 325, 94 S. Ct. 2464 (1974)). *See also State v. Marcum*, 24 Wn. App. 441, 450, 601 P.2d 975 (1979); *Stroud*, 106 Wn.2d at 164 (Durham, J., concurring) (due to mobility, what may be an unreasonable search of a house may be a reasonable search of a vehicle).

[19]Although the State frames its issues for review in a manner that asks whether the state constitution requires the consent of both occupants of a motor vehicle before the vehicle may be searched, neither of the parties has adequately briefed the six factors required to be briefed under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). It relies instead on previous decisions based on analogous circumstances. This does not provide sufficient argument upon which this court will conduct a state constitutional analysis. "Whether the Washington Constitution provides a level of protection different from the federal constitution *in a given case* is determined by reference to the six nonexclusive *Gunwall* factors." (Italics ours.) *State v. Young*, 123 Wn.2d 173, 179, 867 P.2d 593 (1994). Where the *Gunwall* factors are not adequately briefed by the parties, this court will not consider whether the state constitution provides greater protection than that provided by the federal constitution under the circumstances presented. *Collier v. Tacoma*, 121 Wn.2d 737, 763-66, 854 P.2d 1046 (1993) (Durham, J., concurring); *State v. Wethered*, 110 Wn.2d 466, 472-73, 755 P.2d 797 (1988); *State v. Rodriguez*, 65 Wn. App. 409, 414 n.1, 828 P.2d 636, *review denied*, 119 Wn.2d 1019 (1992).

sion is both unworkable and goes beyond the requirements of existing federal case law. In *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973), the defendant was a passenger in a car which the police stopped for a routine traffic stop. Another passenger said the car belonged to his brother and gave the police permission to search the car. Evidence against the defendant was found during the search and the Court upheld the search based on the copassenger's consent.

In situations involving the search of motor vehicles, federal case law has followed the lead of *Schneckloth* and held that the voluntary consent of one with common authority over a vehicle may support a search and evidence discovered can be used against a nonconsenting occupant. For example, in *United States v. Dunson*, 940 F.2d 989, 994-95 (6th Cir. 1991), *cert. denied*, 503 U.S. 941, 117 L. Ed. 2d 629, 112 S. Ct. 1488 (1992), one occupant gave consent to search the automobile; the other occupant, who shared common authority over the vehicle, was not asked whether he would agree to a search. The court recognized that each had a legitimate expectation of privacy in the vehicle, but that permission to search can be obtained from a third person with common authority and such authority can arise from mutual use by persons having joint access or control. The court concluded that the consent of one occupant of the car was effective as to both occupants.

In *United States v. Morales*, 861 F.2d 396 (3d Cir. 1988), one occupant's consent to search an automobile was also held to be valid with respect to the other occupant. The court agreed that the nonconsenting occupant's silence during the search was material in assessing the consenting party's authority. *See also United States v. Varona-Algos*, 819 F.2d 81, 83 (5th Cir.) (passenger who later claimed ownership of car remained silent during the search, thereby impliedly consenting to the search), *cert. denied*, 484 U.S. 929 (1987). *Accord United States v. Horton*, 488 F.2d 374, 380 n.6 (5th Cir. 1973), *cert. denied*, 416 U.S. 993 (1974). *See also United States v. Baldwin*, 644 F.2d 381, 383 (5th Cir. 1981) (wife of

defendant may give consent to search an automobile jointly controlled with her husband, despite the absence of his consent). In *United States v. Anderson*, 859 F.2d 1171, 1176-77 (3d Cir. 1988), the court held the driver's consent to search an automobile was applicable to the passenger although neither occupant was the owner. The court also explained that the passenger's silence during the search was inconsistent with his later claim he retained an expectation of privacy.

In *United States v. Dunkley*, 911 F.2d 522, 526 (11th Cir. 1990), *cert. denied*, 498 U.S. 1096 (1991), the court held that an occupant with joint access to the motor vehicle had authority to consent to a search binding on other occupants. *Accord United States v. French*, 974 F.2d 687 (6th Cir. 1992) (under a common authority theory, the driver's voluntary consent to search the automobile was effective as to both the driver and the passenger), *cert. denied*, 506 U.S. 1066, 122 L. Ed. 2d 160, 113 S. Ct. 1012 (1993); *Dunson*, 940 F.2d at 994 (one occupant's consent to search a vehicle was effective as to another occupant when both borrowed the car from the owner and shared common authority); *United States v. Eldridge*, 984 F.2d 943, 948 (8th Cir. 1993). *See also United States v. Langston*, 970 F.2d 692 (10th Cir.), *certs. denied*, 121 L. Ed. 2d 358, 121 L. Ed. 2d 384, 121 L. Ed. 2d 433 (1992), 123 L. Ed. 2d 491 (1993).

We conclude that the Fourth Amendment clearly does not require all occupants of a motor vehicle to independently consent to the search of the vehicle; the voluntary consent of one who possesses common authority over a vehicle is sufficient to support a search. We reiterate that the issue of whether such consent would continue to be valid as to a co-occupant if the co-occupant overtly objected to the search is not before us.

We therefore disaffirm that part of the Court of Appeals opinion in this case which purported to extend the *Leach* rule to apply to vehicle searches. However, as noted above, we do not review the Court of Appeals conclusion in this case to the effect that even if the consent was valid, the fact that the trooper here obtained the consent during an

allegedly illegal detention tainted the otherwise valid consent. Since that alternative ground for reversal of the conviction is not challenged, the result of the Court of Appeals decision remains unchanged.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.