[No. 16078-5-III. Division Three. May 28, 1998.]

THE STATE OF WASHINGTON, *Appellant*, v. TRACI LYNN O'DAY, *Respondent*.

*David M. Sandhaus, Prosecuting Attorney,* and *Irene K. Asai, Deputy,* for appellant.

*Dennis W. Morgan,* for respondent.

KATO, J. — The State of Washington appeals an order suppressing evidence seized during a search of Traci Lynn O'Day's purse.[1] The State contends the search was properly incidental to the arrest of the driver of a car in which Ms. O'Day was a passenger. Alternatively, the State contends Ms. O'Day validly consented to the search. We affirm the suppression order.

On August 30, 1995, State Patrol Trooper Dan Dale stopped a car driven by James Henry. Trooper Dale had heard a radio report of a "gas drive-off" in Ritzville and recognized the identified vehicle as one he had seen earlier on Interstate 90. The officer arrested Mr. Henry and placed him in the patrol car. When Trooper Dale said he was going to search the car, Mr. Henry admitted there was a black gym bag containing marijuana under the driver's seat.

Trooper Dale told Ms. O'Day, the passenger, to step out of the car so he could conduct the search. The officer could not remember whether Ms. O'Day took her purse with her when she got out of the car, or whether he removed the purse himself. At any rate, the purse was placed on the hood of the car while Trooper Dale searched the interior. Inside the car, the officer found the gym bag containing marijuana and drug paraphernalia.

Trooper Dale asked Ms. O'Day if she had a valid driver's license to determine whether the car would have to be impounded. Ms. O'Day told the officer she did not have a license, but she showed him an identification card.

Trooper Dale did not suspect Ms. O'Day of any criminal activity, nor did he have a concern that she was armed or dangerous. But the officer testified he would not have allowed Ms. O'Day to leave the remote area because of his

---

[1]The information spells the name "Oday," but her brief spells it "O'Day." We use her apparent preference.

concern for her safety. If she had insisted on leaving, he would not have let her go and would have arrested her if necessary.

Trooper Dale asked Ms. O'Day if she had any drugs or weapons in her purse, and she responded that she did not. The officer then asked for Ms. O'Day's consent to search the purse. She agreed and signed a card indicating her consent. Trooper Dale searched the purse and found methamphetamine and drug paraphernalia.

Ms. O'Day was charged with possession of a controlled substance, RCW 69.50.401(d), and moved to suppress the evidence seized in the search of her purse. After hearing Trooper Dale's testimony, the superior court concluded the search was not justified by the earlier arrest of Mr. Henry. The court also concluded that Ms. O'Day's consent was invalid because there were insufficient intervening circumstances to attenuate her detention beyond the purpose of the original stop. The court suppressed the evidence and dismissed the charge. The State appeals the suppression order.

■ ■ On appeal of a superior court's suppression order, we review only those factual findings to which the appellant has assigned error. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994); *see State v. Broadaway*, 133 Wn.2d 118, 129-31, 942 P.2d 363 (1997). Because the State has not assigned error to the superior court's findings, we accept as verities the court's determinations as to the "factual events and happenings," *id*. at 130, but independently examine the legal issues raised by those findings.

We first consider the State's contention that Trooper Dale's search of Ms. O'Day's purse was justified by the arrest of Mr. Henry, the car's driver. Except in a few circumstances, warrantless searches are per se unreasonable. *State v. Johnson*, 128 Wn.2d 431, 446-47, 909 P.2d 293 (1996). Among the recognized exceptions are searches incident to lawful arrests. *Id*. at 443-56. "During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, offic-

ers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence." *State v. Stroud*, 106 Wn.2d 144, 152, 720 P.2d 436 (1986). Under this reasoning, the Supreme Court has permitted searches of various personal items. *See, e.g., State v. Smith*, 119 Wn.2d 675, 835 P.2d 1025 (1992) (fanny pack); *State v. Fladebo*, 113 Wn.2d 388, 779 P.2d 707 (1989) (purse).

Several recent Court of Appeals decisions have addressed when a passenger's personal items are subject to search incidental to the arrest of a vehicle's driver. In *State v. Seitz*, 86 Wn. App. 865, 941 P.2d 5 (1997), a passenger left the vehicle with her purse in her possession before an officer conducted a search of the vehicle incident to the driver's arrest. Division Two held the officer did not have authority to search the purse "where the purse is not in the car at the time of the search, but rather is on the passenger's person and the passenger is outside the car." *Id.* at 869.

In *State v. Parker*, 88 Wn. App. 273, 944 P.2d 1081 (1997), the passenger left her purse inside the car while the officer conducted a search of the vehicle incident to the arrest of the driver. We held the search of the purse was proper, distinguishing *Seitz* and cases from other jurisdictions on the ground that in those cases the passengers had left the vehicles with their purses in their possession. *Parker*, 88 Wn. App. at 280-81.

In *State v. Nelson*, 89 Wn. App. 179, 948 P.2d 1314 (1997), a passenger was arrested on an outstanding warrant, and the officer ordered the driver to get out of the vehicle, leaving her purse inside. We held the search of the purse was not justified by the arrest of the passenger and the subsequent incidental search, distinguishing *Parker* on the degree of "control" exercised: "When the person maintains control over the personal property and there are no furtive movements indicating he or she is trying to hide something, the police are not allowed to search the property." *Nelson*, 89 Wn. App. at 183. Division Two, on almost identical facts, has rejected this reasoning, holding that "control" is irrel-

evant to the question of whether a container is subject to a search incident to arrest. *State v. Hunnel*, 89 Wn. App. 638, 949 P.2d 847 (1998).

■ The facts of this case do not implicate the core of the disagreement. Read together, *Seitz, Parker, Nelson,* and *Hunnel* all suggest that when a purse is no longer inside a vehicle to be searched, it is not subject to a search incidental to the arrest of the vehicle's driver. This conclusion also is consistent with two Pennsylvania cases distinguished by *Parker,* 88 Wn. App. at 280, on the grounds that the passengers in each of those cases "exited the automobile with the purse in her possession." *See Commonwealth v. Knoche*, 451 Pa. Super. 54, 678 A.2d 395 (1996); *Commonwealth v. Shiflet*, 543 Pa. 164, 670 A.2d 128 (1995).

Here, it is undisputed that the purse was not in the vehicle at the time Trooper Dale began his search incident to Mr. Henry's arrest.[2] The search therefore may not be justified as incidental to the arrest.

■ ■ We next consider the State's contention that Ms. O'Day validly consented to the search of her purse. Voluntary consent is another exception to the warrant requirement. *State v. Cantrell*, 124 Wn.2d 183, 187, 875 P.2d 1208 (1994). Even a voluntary consent, however, may be vitiated by an unlawful detention. *State v. Armenta*, 134 Wn.2d 1, 17-18, 948 P.2d 1280 (1997); *State v. Soto-Garcia*, 68 Wn. App. 20, 26-27, 841 P.2d 1271 (1992) (consent "obtained through exploitation of a prior illegality may be invalid even if voluntarily given"), *disapproved on other grounds*

---

[2]The State relies on *Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997), in which the Court held an officer may order all passengers out of a vehicle when making a traffic stop. *Wilson* does not apply directly, because Ms. O'Day does not contend Trooper Dale improperly ordered her to get out of the vehicle. The State nevertheless contends *Wilson* should be extended to permit an officer to order passengers to leave their personal items inside the car. The argument is unconvincing for two reasons. First, Trooper Dale did not order Ms. O'Day to leave the purse inside the car. Second, by placing Ms. O'Day's purse on the hood of the car (and presumably beyond her easy reach), Trooper Dale alleviated the safety concerns that formed the basis of the Supreme Court's concerns in *Wilson*.

*in State v. Thorn,* 129 Wn.2d 347, 350-51, 917 P.2d 108 (1996). Whether a person has been unlawfully detained is a mixed question of law and fact; a court's factual findings are entitled to great deference, but the ultimate question of whether those facts constitute a seizure is an issue of law to be reviewed de novo. *Armenta,* 134 Wn.2d at 9 (citing *Thorn,* 129 Wn.2d at 351).

██ The initial issue here, then, is whether Trooper Dale unlawfully detained Ms. O'Day.

> "Not every encounter between an officer and an individual amounts to a seizure." *State v. Aranguren,* 42 Wn. App. 452, 455, 711 P.2d 1096 (1985). A person is "seized" under the Fourth Amendment only if, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980), quoted in *Aranguren,* 42 Wn. App. at 455; accord *Florida v. Bostick,* 501 U.S. 429, 439, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991) (question is "whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter"). "Whether a reasonable person would believe he was detained depends on the particular, objective facts surrounding the encounter." *State v. Ellwood,* 52 Wn. App. 70, 73, 757 P.2d 547 (1988) (citing *Mendenhall,* 446 U.S. at 554).

*Armenta,* 134 Wn.2d at 10-11.

██ The superior court found Trooper Dale detained Ms. O'Day and would have prevented her from leaving for her own safety. However, the court did not find that the officer communicated his intention to Ms. O'Day. In fact, the officer testified he did not tell her she was not free to leave. Trooper Dale's subjective intent should play no part in determining whether the objective facts establish a constitutional seizure. The issue rather is whether a reasonable person in these circumstances would believe she was free to leave.

In *Soto-Garcia,* an officer saw the defendant walking

from an alley in an area known for cocaine trafficking. *Soto-Garcia*, 68 Wn. App. at 22. The officer pulled his patrol car over, and the defendant approached voluntarily. The officer asked several questions, which the defendant answered appropriately. The officer then asked if the defendant had any cocaine on him and obtained his permission to search. *Id.* On appeal of a suppression order, the court agreed the evidence was sufficient "to conclude that a reasonable person would not have felt free to decline the police officer's requests that he provide information regarding his activities and submit to a search." *Id.* at 25.

In *Armenta*, the two defendants approached a uniformed police officer at a truck stop and asked if he knew of a mechanic who could repair their car. *Armenta*, 134 Wn.2d at 4-5. The officer offered to look at the car himself, and they agreed. *Id.* at 5. The officer asked the men for identification. He later noticed a bulge in one man's pocket and asked if it was a wallet; the man took out "[a] wad of money" and gave a suspicious explanation. The other man also produced bundles of money and gave a similarly suspicious explanation. *Id.* at 5-6. At that point, the officer radioed for a "driver's check" on the two men, learned one of them had a suspended Arizona driver's license, and placed the bundles of cash in his patrol car "for safe keeping." *Id.* at 6. The officer asked if there were any drugs or weapons in the car; defendant Armenta said "no." The officer then asked for permission to search the car, explaining that Armenta was not required to consent. He did consent, and the officer discovered drugs and weapons. *Id.*

The Supreme Court noted that a request for identification generally is not a seizure, particularly when the request is for a purpose other than investigating criminal activity and when the police officer did not initiate the contact. *Id.* at 11. However, the court held a seizure occurred when the officer placed the defendants' money in the patrol car, concluding reasonable persons would have realized at that point that they were not free to leave. *Id.* at 12.

 In this case, Trooper Dale's request for identification was not for investigative purposes, but was to determine if Ms. O'Day could drive the car. However, the officer also told Ms. O'Day to get out of the car, placed her purse outside her reach, asked if she had drugs or weapons in her purse, and asked if she would consent to a search. Ms. O'Day did not initiate the encounter. Trooper Dale testified he asked for permission to search the purse because he believed, based on his discoveries during his search of the car, that the purse also might contain contraband. A reasonable person would realize under these circumstances that she was not free to leave. The encounter thus became an investigative detention, and Ms. O'Day was constitutionally seized at that time.

 The next question is whether the seizure was lawful. To be lawful, an investigative detention must be "reasonable." *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)).

> The reasonableness of such a detention depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975) (citations omitted); *accord Brown v. Texas*, 443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979). A seizure is reasonable if the state can point to "specific and articulable facts giving rise to a reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity." *State v. Gleason*, 70 Wn. App. 13, 17, 851 P.2d 731 (1993) (citing *Terry*, 392 U.S. at 21-22); *accord United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *State v. Garcia*, 125 Wn.2d 239, 242, 883 P.2d 1369 (1994).

*Armenta*, 134 Wn.2d at 10.

As Trooper Dale freely admitted, Ms. O'Day was not suspected of any criminal activity before the search of her purse. She had done nothing to indicate to the officer that she was armed or dangerous. Trooper Dale had no specific

or articulable facts that would have led to a reasonable suspicion that Ms. O'Day was engaged, or about to become engaged, in criminal activity. Just as in *Armenta*, even though he may not have been acting maliciously, it is apparent Trooper Dale was " 'fishing' for evidence of illegal drug trafficking." *Id*. at 17. The seizure was unlawful.

█ But this does not end the inquiry. We still must determine whether Ms. O'Day's consent was tainted by the illegal seizure. Several factors are relevant: "(1) temporal proximity of the illegality and the subsequent consent, (2) the presence of significant intervening circumstances, (3) the purpose and flagrancy of the official misconduct, and (4) the giving of *Miranda*[3] warnings." *Soto-Garcia*, 68 Wn. App. at 27; *see Armenta*, 134 Wn.2d at 17. Trooper Dale's misconduct was not flagrant. But the illegality and the consent were contemporaneous; there were no significant intervening circumstances; and the officer had not administered *Miranda* warnings. The initially innocent encounter became an unlawful investigative detention, which tainted Ms. O'Day's consent. The trial court did not err in suppressing the evidence.

The order is affirmed.

KURTZ, A.C.J., and SWEENEY, J., concur.

---

[3]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966).