251 P.3d 896 (2011)
STATE of Washington, Respondent,
v.
Michael S. PETTIT, Appellant.
No. 40014-6-II.
Court of Appeals of Washington, Division 2.
January 11, 2011.
Publication Ordered April 5, 2011.
*897 James Lewis Reese III, Attorney at Law, Port Orchard, WA, for Appellant(s).
Jeremy Aaron Morris, Kitsap County Prosecutor's Office, Port Orchard, WA, for Respondent(s).
HUNT, J.
¶ 1 Michael Sanaco Pettit appeals his stipulated-facts bench trial conviction for violating a no contact order, domestic violence. He argues that the trial court should have suppressed evidence of his passenger's identity because the investigating officer improperly exceeded the scope of a traffic stop. Holding that the officer had a valid basis for suspecting criminal activity and extending the investigation,[1] we affirm.

FACTS
¶ 2 Kitsap County Sheriff's Deputy Lee Watson stopped Michael S. Pettit because his car had a loud exhaust, generated by a "coffee can" muffler, which RCW 46.37.390(1) and (3) prohibit. Verbatim Report of Proceedings (VRP) at 9. A record check disclosed that Pettit was named in a no contact order issued for the protection of a 16-year-old girl, Michelle Whitmarsh.
*898 ¶ 3 Pettit's front seat female passenger appeared to be about 16.[2] Watson returned to Pettit's car and asked the passenger for her name. She told him that she was Samantha M. Wright and that her birth date was October 21, 1989.[3] Watson ran a check on that name and found no record. He did obtain more information from dispatch about Michelle Whitmarsh, who was described as having brown hair, hazel eyes, and a tattoo on her left hand. He also discovered that Whitmarsh was listed as missing and that there was a warrant for her arrest.
¶ 4 When Watson returned to Pettit's car, he discovered that his young female passenger had the letter "M" tattooed on her left hand. After he confirmed that Whitmarsh's tattoo was an "M," he arrested Pettit for violation of the no contact order. He also took Whitmarsh into custody. The entire encounter took 11 minutes.
¶ 5 Pettit moved to suppress Whitmarsh's identity. When the court denied that motion, he went to trial without a jury on stipulated facts. The trial court convicted him as charged and sentenced him to six months in jail.

ANALYSIS
¶ 6 Pettit argues that Watson had no legal basis for questioning his passenger and, therefore, the trial court erred in refusing to suppress the evidence obtained from that questioning. We disagree.
¶ 7 Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision prohibits law enforcement officials from requesting identification from passengers for investigative purposes unless there is an independent basis that justifies that request. State v. Rankin, 151 Wash.2d 689, 699, 92 P.3d 202 (2004). One such independent basis is an articulable suspicion of criminal activity. Rankin, 151 Wash.2d at 697-98, 92 P.3d 202; State v. Allen, 138 Wash.App. 463, 469, 157 P.3d 893 (2007). In order to satisfy that requirement, the officer must be able to identify specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant the intrusion. State v. Bliss, 153 Wash.App. 197, 204, 222 P.3d 107 (2009). A traffic stop does not become an unlawful seizure simply because the officer inquires into matters unrelated to the justification for the stop, so long as those inquiries "do not measurably extend the duration of the stop". Arizona v. Johnson, 555 U.S. 323, 129 S.Ct. 781, 788, 172 L.Ed.2d 694 (2009).
¶ 8 Pettit relies on Allen. In that case, the officer stopped a car driven by Peggy Allen for a traffic infraction. She had a male passenger, defendant Ryan Allen. A records check indicated that Peggy Allen was the protected person in a no contact order. The officer, however, had no information about the person against whom the order had been entered; he did not even know whether that person was male or female. Allen, 138 Wash.App. at 466, 157 P.3d 893. Nevertheless, he asked the passenger for identification. Both the passenger and the driver said that the passenger's name was Ben Haney. There was no record for that name, but further questioning of the driver disclosed that the passenger was Ryan Allen and that the no contact order had been entered against him. We held that the officer had no reason to ask for the passenger's name because the officer had no reason to suspect that the passenger was the person named in the no contact order. Allen, 138 Wash.App. at 471, 157 P.3d 893.
¶ 9 This case is materially distinguishable from Allen. First, Deputy Watson knew that the no contact order protected a 16-year-old girl named Michelle Whitmarsh from Pettit and that Pettit's front seat female passenger appeared to be sixteen. These facts were sufficient to support a rational inference warranting the officer's initial request for the passenger's identification to determine whether she was the person whom the no contact order sought to protect. *899 Pettit's female passenger provided a birth date that was not consistent with her apparent age, justifying the subsequent records check, which then led to the corroborating physical description, including the identifying tattoo on her left hand. The additional investigation was brief and did not significantly extend the duration beyond that of a typical traffic stop.[4]
¶ 10 Second, in Allen, it was the appellant who was the passenger, not the driver, as here. On appeal, passenger Allen challenged the question put to him, as well as to the questioning of the driver. Our decision was based on the questioning of Allen, himself; and our holding focused on the questioning of the passenger appellant, who had standing to challenge the officer's questioning of him. Here, in contrast, Pettit challenges the questioning, not of him, but of his passenger Whitmarsh. But he lacks standing to challenge his passenger's questioning. See State v. Shuffelen, 150 Wash. App. 244, 254-56, 208 P.3d 1167, review denied, 220 P.3d 210 (2009).
¶ 11 Third, here, the protected person was a minor, who had been reported missing. The legislature has found that the potential for physical and psychological trauma to missing children, including runaways, is "extreme." RCW 13.60.100. The risks involved can create exigent circumstances, justifying warrantless searches. See State v. Sadler, 147 Wash.App. 97, 123-24, 193 P.3d 1108 (2008) (information that 14-year-old runaway, possibly involved in sadomasochistic sex, was in home of significantly older male, justified entry into the home); State v. Raines, 55 Wash.App. 459, 463, 778 P.2d 538 (1989) (warrantless entry justified when premises may contain persons in danger of harm or information about location of threatened victim), review denied, 113 Wash.2d 1036, 785 P.2d 825 (1990). Here, an earlier court had found good cause to issue a no contact order against Pettit for the protection of a minor female; that minor was missing and her description was consistent with Pettit's passenger. These exigent circumstances warranted Watson's brief detention to determine the identity of the minor female passenger in Pettit's car.
¶ 12 Affirmed.
We concur: VAN DEREN, J., and WORSWICK, A.C.J.
NOTES
[1] A commissioner of this court considered this matter pursuant to RAP 18.14 and referred it to a panel of judges.
[2] There was also a woman and a young child in the rear passenger seats. The woman appeared to be in her mid twenties.
[3] That would have made her almost 20 years old, because the stop occurred on April 2, 2009.
[4] Deputy Watson testified that such stops generally last from 10 to 15 minutes.