IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77038-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| CARMEN ROSE LEE, | ) | |
| | ) | FILED: February 25, 2019 |
| Appellant. | ) | |

VERELLEN, J. — When analyzing whether a passenger's voluntary consent to search her purse has been vitiated by an unlawful seizure, the starting point is the traffic stop that culminated in the search. If police validly stop a car for a traffic infraction, the driver and passengers are lawfully seized. Generally, the seizure continues and remains reasonable for the duration of the traffic stop, ending when police no longer need to control the scene and tell the passengers they are free to leave. Under article I, section 7 of the Washington Constitution, the scope and duration of a lawful traffic stop are governed by the rationale of Terry v. Ohio,[1] depend on the totality of the circumstances, and may expand as the circumstances change.

---

[1] 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Under the totality of the circumstances, the police did not exceed reasonable scope and duration limitations merely by asking a lawfully seized passenger for consent to search a purse she left inside the car and making a single mention of her prior drug conviction. Carmen Lee's voluntary consent to search her purse was not vitiated by an unlawful seizure.

We affirm Lee's conviction for possession of controlled substances with intent to deliver.

## FACTS

On July 7, 2015, Michael Peterman was driving a car, and Lee was the front seat passenger. Detective Garry Tilleson initiated a traffic stop for two traffic infractions. Detective Tilleson asked Peterman for his identification, learned his license was suspended, and arrested him for first degree driving while license suspended or revoked. Peterman consented to a search of the car.

Detective Tilleson told Lee to step out to facilitate his search of the car. She left her purse inside the car. Detective Tilleson ran Lee's identification information to determine if she had a driver's license so she could drive the car if it was not impounded. He learned Lee had a valid driver's license and a conviction for possession of a controlled substance. Lee began to pace back and forth near the car. At some point, Detective Ross Fryberg directed Lee to sit on a nearby curb. During a conversation, Lee told Detective Tilleson the purse in the car was hers. Detective Tilleson asked Lee for permission to search her purse, telling her

that he was asking "due to her prior drug conviction."[2] He also gave Lee warnings pursuant to State v. Ferrier[3] that she was not obligated to consent and that she could revoke consent or limit the scope of the search at any time. Lee consented to the search.[4] When Detective Tilleson asked Lee if there was anything in her purse he should be concerned about, she said there was some heroin inside. Detectives found heroin and methamphetamine in her purse, advised Lee of her Miranda[5] rights, and arrested her for possession of a controlled substance with intent to manufacture or deliver.

Lee moved to suppress the evidence obtained from the search of her purse. Lee testified she did not consent to the search and that a detective told her "he didn't care if there was a little bit of dope in my bag and he just searched the car and searched my stuff."[6] Lee also testified she "probably" had been using heroin that day.[7]

Detective Tilleson testified he did not suspect Lee of a crime when he requested her consent to search her purse. He and Detective Fryberg confirmed that Detective Tilleson first obtained Lee's consent to search the purse, gave

---

[2] Report of Proceedings (RP) (Oct. 6, 2016) at 31.

[3] 136 Wn.2d 103, 960 P.2d 927 (1998).

[4] Both detectives testified that Detective Tilleson provided Ferrier warnings, and that Lee never revoked her consent or asked the officer to stop or to limit the scope of the search.

[5] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 10 Ohio Misc. 9 (1966).

[6] RP (Oct. 6, 2016) at 105.

[7] Id. at 110.

3

Ferrier warnings, and then Lee disclosed there were narcotics in the purse. Neither detective recalled telling Lee she was free to leave during the stop. Dispatch time log records suggest the traffic stop commenced at 7:23 p.m. and Detective Tilleson conducted his search at 7:41 p.m.

The trial court denied Lee's motion to suppress the results of the search of her purse. The court found "the testimony of the [detectives] involved [was] more credible than the defendant's testimony."[8] The court also noted the detectives inquired about Lee's identity "to determine if she was a licensed driver so that the vehicle could be released to her as an alternative to impoundment."[9] The trial court determined that all of Lee's statements were voluntary and that none were coerced. The court concluded that Lee validly consented to a search of her purse.

At the bench trial on stipulated facts, the judge found Lee guilty of possession of a controlled substance with intent to deliver. Lee appeals.

## ANALYSIS

Challenged findings entered after a suppression hearing that are supported by substantial evidence are binding; unchallenged findings are verities on appeal.[10] Substantial evidence is enough evidence to persuade a fair-minded

---

[8] Clerk's Papers (CP) at 90 (finding of fact 17).

[9] Id. at 89.

[10] State v. O'Neil, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

person of the truth of the finding.[11] This court reviews the trial court's conclusions of law de novo.[12]

Lee's challenges the sufficiency of the evidence supporting eight of the findings of fact from the suppression hearing. Her challenges are not compelling. Because the trial court heard the testimony from both Lee and the detectives, there was sufficient evidence to support the finding that the officers were more credible than Lee.[13] Lee's challenges to other findings are narrow and either relate to theories on which we do not rely or are otherwise immaterial.

Passenger's Consent to Search Her Purse

Lee's core argument is that she did not validly consent to the search of her purse because the detectives unlawfully seized her. Notably, she does not challenge the voluntariness of her consent or assert any theory of coercion.[14]

Both the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution prohibit a warrantless search or seizure unless an exception applies.[15] Voluntary consent is an exception to the warrant requirement.[16] But an otherwise voluntary consent may be vitiated by an unlawful

---

[11] State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

[12] State v. Levy, 156 Wn.2d 709, 733, 132 P.2d 1076 (2006).

[13] See State v. Cardenas-Flores, 189 Wn.2d 243, 266, 401 P.3d 19 (2017) ("'Credibility determinations are reserved for the trier of fact' and are not subject to review." (quoting State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990))).

[14] Lee does not assign error to the trial court determinations that all of her statements were voluntary and none was coerced. CP at 91 (conclusion of law 5).

[15] State v. Rankin, 151 Wn.2d, 689, 695, 92 P.3d 202 (2004).

[16] State v. Cantrell, 124 Wn.2d 183, 187, 875 P.2d 1208 (1994).

seizure.[17] When analyzing a passenger's consent to search the purse she left in the car, we start with the traffic stop that led to the search.

When police conduct a traffic stop, "it is now well established that '[f]or the duration of a traffic stop . . . a police officer effectively seizes everyone in the vehicle.'"[18] If the traffic stop is valid, then seizure of the driver and passengers is also valid.[19] A passenger's seizure "ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave."[20]

At oral argument, Lee asserted that article I, section 7 of the Washington Constitution controls.[21] She contends the portions of Arizona v. Johnson[22] and

---

[17] State v. Armenta, 134 Wn.2d 1, 17-18, 948 P.2d 1280 (1997); State v. Soto-Garcia, 68 Wn. App. 20, 26-27, 841 P.2d 1271 (1992) (consent "obtained through exploitation of a prior illegality may be invalid even if voluntarily given"), abrogated on other grounds, State v. Thorn, 129 Wn.2d 347, 917 P.2d 108 (1996)).

[18] State v. Marcum, 149 Wn. App. 894, 910, 205 P.3d 969 (2009) (alterations in original) (internal quotation marks omitted) (quoting Arizona v. Johnson, 555 U.S. 323, 327, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009)); see Brendlin v. California, 551 U.S. 249, 255, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007).

[19] Marcum, 149 Wn. App. at 910.

[20] Arizona v. Johnson, 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009).

[21] Lee has not offered any Gunwall analysis about police officers asking questions unrelated to the justification for the traffic stop. State v. Gunwall, 106 Wn.2d 54, 729 P.2d 808 (1986).

[22] 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009).

Rodriguez v. United States[23] regarding Fourth Amendment analysis of unrelated questions during a traffic stop do not apply here. Accepting Lee's premise without deciding it, the key question then becomes what standard applies under article I, section 7 of the Washington Constitution to analyze the impact of an officer's question unrelated to the justification for the traffic stop.[24] We are guided by a long line of well accepted Washington Supreme Court decisions.

The Fourth Amendment and article I, section 7 both recognize an investigative stop exception to the warrant requirement as set forth in Terry v. Ohio.[25] The rationale of Terry applies by analogy to traffic stops.[26]

At oral argument, Lee acknowledged the Terry standards for scope and duration of a stop apply and are the same when analyzed under either the Fourth

---

[23] ___ U.S. ___, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015).

[24] Although the briefing by both parties focused on whether and when Lee was seized based on conduct after the traffic stop commenced, we directed the parties to come to oral argument prepared to address specific questions and specific cases, including Johnson and Rodriguez, about the seizure of passengers at the beginning of a traffic stop and whether unrelated questions may be asked during the stop. As a result, the parties' ultimate arguments depart significantly from the briefs.

[25] 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Washington courts recognize the Terry stop exception under article I, section 7 of the Washington Constitution. State v. Mecham, 186 Wn.2d 128, 135, 380 P.3d 414 (2016); State v. Ladson, 138 Wn.2d 343, 348-50, 979 P.2d 833 (1999).

[26] Mecham, 186 Wn.2d at 137-38 ("As set forth in Terry, a traffic stop is a seizure for the purposes of constitutional analysis—it is analogous to a brief investigative detention."); State v. Snapp, 174 Wn.2d 177, 198, 275 P.3d 289 (2012) ("Terry's rationale applies to traffic infractions."); State v. Arreola, 176 Wn.2d 284, 292-93, 290 P.3d 983 (2012) ("Warrantless traffic stops are constitutional under article I, section 7 as investigative stops, but only if based upon at least a reasonable articulable suspicion of either criminal activity or a traffic infraction, and only if reasonably limited in scope.").

Amendment or article 1, section 7. Lee's concession is consistent with our Supreme Court's recognition in State v. Z.U.E. that "[i]n a challenge to the validity of a Terry stop, article I, section 7 generally tracks the Fourth Amendment analysis."[27]

The standards for a Terry stop, including the appropriate scope of such a stop, are well established in Washington.[28] We analyze such stops on a case-by-case basis.[29] "[C]ourts must review an officer's actions under the totality of the circumstances to determine if a [Terry stop] seizure is made with the authority of law and is of reasonable scope and duration."[30]

"Similar to the analysis for determining the initial validity of the stop, the proper scope of a Terry stop depends on 'the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time the suspect is detained.'"[31] "A lawful Terry stop is limited in scope and duration to fulfilling the investigative purpose of the stop."[32] Once that purpose is fulfilled, the stop must

---

[27] 183 Wn.2d 610, 617, 352 P.3d 796 (2015) (recognizing the sole distinction that a Terry stop analyzed under article I, section 7 requires a reasonable suspicion connecting a particular person to a particular crime rather than a general suspicion that someone is up to no good).

[28] State v. Young, 135 Wn.2d 498, 510, 957 P.2d 681 (1998) ("Washington search and seizure law stemming from Terry . . . is well established.").

[29] Mecham, 186 Wn.2d at 138.

[30] State v. Flores, 186 Wn.2d 506, 525 n.8, 379 P.3d 104 (2016).

[31] State v. Alexander, 5 Wn. App. 2d 154, 160, 425 P.3d 920 (2018) (quoting State v. Williams, 102 Wn.2d 733, 740, 689 P.2d 1065 (1984)).

[32] State v. Acrey, 148 Wn.2d 738, 747, 64 P.3d 594 (2003).

end.[33] An officer may lawfully extend the stop's scope and duration based on information obtained by officers during the traffic stop.[34] "There is no rigid time limitation on Terry stops."[35]

Washington courts also recognize that officers may conduct routine law enforcement procedures during traffic stops "as long as they do not unreasonably extend the initial valid stop."[36] For example, officers may request a vehicle's occupants "to step out of and away from their vehicles, and to perform other limited movements."[37] [38] Officers may require passengers to get out of a vehicle to facilitate a search of the vehicle.[39] Apart from general officer safety concerns, we note the presence of a passenger in a car during a search of the car would frustrate the efficiency and effectiveness of the search and would place both the

---

[33] Id.

[34] Id.

[35] State v. Vanhollebeke, 197 Wn. App. 66, 76, 387 P.3d 1103 (2016), affirmed, 190 Wn.2d 315 (2017).

[36] Alexander, 5 Wn. App. 2d at 162-63.

[37] Mecham, 186 Wn.2d at 144; see also State v. Flores, 186 Wn.2d 506, 516, 379 P.3d 104 (2016) (during a traffic stop, officers may order passengers to stay in or exit a vehicle in order control the scene of an investigation and ensure their safety as long as they can articulate an objective rationale for doing so).

[38] Lee's challenge to finding of fact 9 relates to whether she was seized while pacing, a theory immaterial to the ultimate legal question. Lee challenges finding of fact 12 "to the extent" it suggests usual practice permitted officers to remove her from the car. Appellant's Br. at 1. But the legal authority of officers at a traffic stop to control the scene and instruct passengers to get out of a car to facilitate a search does not depend on a finding about usual practices.

[39] State v. Rehn, 117 Wn. App. 142, 151, 69 P.3d 379 (2003).

passenger and the officer in an awkward position. Officers are obligated to consider reasonable alternatives to impoundment such as determining whether the driver's spouse or friends are available to move the vehicle.[40] And while an officer in a traffic stop may not request identification from a passenger for investigatory purposes absent an independent reason to justify the request, an officer may check the passenger's identification to determine if the passenger has a valid driver's license when considering whether to allow the passenger to drive the car from the scene.[41]

Because Lee was lawfully seized at the beginning of the traffic stop and remained reasonably seized when she was asked to consent to a search of the purse she left in the car, our inquiry is whether police exceeded the reasonable scope and duration of the traffic stop by asking her consent to search her purse while mentioning her prior drug conviction.

The totality of the circumstances here includes a valid traffic stop for a cracked windshield and an inoperative brake light, in violation of RCW 46.37.070 and RCW 46.37.410. Detectives lawfully checked Peterson's identification and lawfully arrested him once they determined he was driving with a suspended license. Peterson consented to a search of the car, and a detective lawfully requested that Lee exit while he searched the car. The detectives legitimately

---

[40] State v. Tyler, 177 Wn.2d 690, 698, 302 P.3d 165 (2013).

[41] State v. Larson, 93 Wn.2d 638, 642-45, 611 P.2d 771 (1980); State v. Rankin, 151 Wn.2d 689, 699, 92 P.3d 202 (2004); State v. Mennegar, 114 Wn.2d 304, 309, 787 P.2d 1347 (1990).

checked Lee's identification to determine whether she was a licensed driver and could drive the car from the scene following Peterson's arrest. And the search of the purse occurred roughly 18 minutes after the traffic stop began.

Lee provides no authority, and we find none, indicating that merely asking a lawfully seized person if they consent to a search of a container voluntarily left in a car somehow renders their seizure unlawful or exceeds the reasonable scope and duration of a traffic stop. The purpose of this traffic stop reasonably expanded to include the arrest of the driver and consensual search of the car. Under these changing circumstances, it was not unreasonable for the detective to ask Lee if she consented to a search of the purse she left in the car after she knew the detectives would be searching the car.

The mention of Lee's prior drug conviction must also be considered as part of the totality of the circumstances. Here, there was a single mention of the conviction in passing. There was no physical intrusion upon Lee. And the time required to say the words "prior drug conviction" was inconsequential.

The word "reasonable" implies a measure of flexibility and practicality. If the reasonable scope and duration standard could be exceeded by the single reference to a prior conviction in this case, it would prove too rigid and brittle a standard for the realities of police work. We conclude that the police did not exceed the reasonable scope or duration of the expanded traffic stop under the totality of the circumstances. Therefore, Lee fails to establish that under article I,

section 7, her voluntary consent to search her purse was vitiated by police conduct.[42] [43]

The trial court mentioned officer safety concerns because the purse could have concealed a weapon. Although officer safety during traffic stops is always a serious concern, we do not rely on the abstract potential for a weapon in a purse. The only testimony was that Lee had not demonstrated any risk of being armed or dangerous. Any concerns that she might obtain possession of her purse when the traffic stop ended and that her purse was big enough to contain a weapon are abstract. If that is the standard, then virtually every traffic stop with a modestly sized container inside a car would justify a search of the container, no matter how

---

[42] Lee's premise is that article I, section 7 governs and that the portions of Johnson and Rodriguez regarding unrelated questions during traffic stops have no application here. Therefore, we need not engage in any alternative Fourth Amendment analysis under those cases. But we note that there is Washington authority suggesting that a single question unrelated to the traffic stop does not measurably extend the duration of the stop or prolong the stop beyond the time reasonably required to complete the stop's mission for purposes of the Fourth Amendment. See State v. Pettit, 160 Wn. App. 716, 720, 251 P.3d 896 (2011) (asking a question unrelated to the justification for traffic stop "was brief and did not significantly extend the duration beyond that of a typical traffic stop"); State v. Shuffelen, 150 Wn. App. 244, 257, 208 P.3d 1167 (2009) ("Nor was this question violative of Ms. Shuffelen's rights simply because it was unrelated to [the officer's] justification for the initial traffic stop.").

[43] Lee challenges finding of fact 10 "to the extent that it suggests that [she] validly consented to the search of her purse." Appellant's Br. at 1. But detective testimony supports the specific facts in that finding. Also, our review of whether police conduct vitiated her voluntary consent does not depend on any inference of validity from finding of fact 10.

benign the circumstances. The State cites no authority supporting such a sweeping view of officer safety as a rationale for a warrantless search.[44]

Lee also suggests the trial court relied on the theory that police conducted an inventory search of the car. We do not read the record to reflect that the police conducted an inventory search, or that the trial court relied on an inventory search exception.[45]

As discussed at oral argument, in State v. O'Day, Division Three of this court found that a passenger was illegally seized when an officer ordered her out of the car, kept her purse out of reach, asked if she had drugs or weapons, and asked if she would consent to a search.[46] The court held the illegal investigative detention vitiated the defendant's consent.[47] O'Day is distinguishable because of factual differences and is inapposite because it is now clear that a passenger in a traffic stop is necessarily seized when the stop begins, and ordinarily, that seizure continues and remains reasonable for the duration of the stop.[48]

---

[44] Lee challenges findings of fact 13 and 14 regarding alleged officer safety concerns and the suggestion that officers could search her purse "merely because [it] could have concealed a weapon." Appellant's Br. at 2. But we do not rely on officer safety concerns specific to Lee and her purse.

[45] Lee challenges finding of fact 11 "to the extent it suggests that the officers legitimately invoked the inventory search." Appellant's Br. at 1. But neither the trial court nor we rely on an inventory search exception.

[46] 91 Wn. App. 244, 253, 955 P.2d 860 (1998).

[47] Id.

[48] Similar to O'Day, many of the cases cited by Lee are inapposite because they are based on the outdated premise that a passenger in a traffic stop had not been seized at the commencement of the stop.

We conclude Lee's voluntary consent to search her purse was not vitiated by police conduct at the traffic stop. Specifically, under the totality of the circumstances, the police did not exceed the reasonable scope and duration of the traffic stop.

## Spouse's Consent to Search Car Not a Manifest Constitutional Issue

For the first time on appeal, Lee contends that article I, section 7 of the Washington Constitution requires the consent of both the driver and passenger for a search of a car when they are spouses. Lee concedes our Supreme Court held in State v. Cantrell that the Fourth Amendment does not require all occupants of a motor vehicle to independently consent to a vehicle search.[49] Lee contends we should analyze whether article I, section 7 provides greater protection than the Fourth Amendment. Lee argues this is a manifest constitutional error that may be raised for the first time on appeal.

A manifest error is one "truly of constitutional magnitude."[50] But if the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown, and the error is not manifest.[51]

Lee argues that the only facts necessary to apply article I, section 7 are that the spouses were the only ones using the car. But neither spouse was the

---

[49] 124 Wn.2d 183, 188, 875 P.2d 1208 (1994) ("warrantless searches can be used against a nonconsenting defendant").

[50] State v. Scott, 110 Wn.2d 682, 688, 757 P.2d 492 (1988).

[51] State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); State v. Riley, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993).

registered owner, and the record contains no information about Lee or Peterman's relationship with the registered owner. Under article I, section 7, the authority over the car likely includes consideration of the spouses' relationship with the registered owner and scope of permission granted by the owner.[52] On the existing record, Lee fails to establish a manifest error that may be raised for the first time on appeal.[53]

Attentuation Doctrine Not at Issue

Lee argues that article I, section 7 does not allow application of the federal attenuation doctrine. But in its brief, the State acknowledges it does not rely on attenuation.[54] We need not address the substance of this argument.

---

[52] See generally State v. Morse, 156 Wn.2d 1, 8, 123 P.3d 832 (2005) ("Common authority under article I, section 7 is grounded upon the theory that when a person, by his actions, shows that he has willingly relinquished some of his privacy, he may also have impliedly agreed to allow another person to waive his constitutional right to privacy."); State v. Vanhollebeke, 190 Wn.2d 315, 329, 412 P.3d 274 (2017) (a driver's right to privacy in another's vehicle completely "fade[s] away" at some point when the driver's use is not permissive; the existence and scope of the owner's permission is a factor to consider under article I, section 7).

[53] Lee challenges finding of fact 8 "to the extent" it suggests the husband alone could consent to a search of the car. Appellant's Br. at 1. But that issue is not a manifest error which may be raised for the first time on appeal.

[54] Resp't's Br. at 39 ("[T]he State concedes that if Lee was unlawfully seized prior to giving consent to search her purse, any evidence gathered thereafter should have been excluded.").

## CONCLUSION

Lee was necessarily seized as a passenger in the traffic stop and remained reasonably seized for the duration of the stop. Even assuming article I, section 7 controls, the scope and duration of the traffic stop are governed by the Terry rationale. The scope and duration of the traffic stop expanded to include the arrest of the driver and the consensual search of the car.

Under the totality of the circumstances, the police did not exceed the reasonable scope and duration limitations by asking Lee for consent to search the purse she left inside the car and by making a single mention of Lee's prior drug conviction. Because the police did not exceed the reasonable scope and duration limitations, Lee's voluntary consent to search her purse was not vitiated by police conduct.

We affirm.

WE CONCUR: