[No. 19749-9-II. Division Two. July 18, 1997.]

THE STATE OF WASHINGTON, *Respondent,* v. ALICE SEITZ, *Appellant.*

---

[2]*See e.g., State v. Cotten,* 75 Wn. App. 669, 679, 879 P.2d 971 (1994), *review denied,* 126 Wn.2d 1004 (1995).

*Gregg E. Bradshaw* and *Walker Bradshaw & Oaks, P.S.,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Thomas C. Roberts, Deputy,* for respondent.

MORGAN, J. — About 11 P.M. on March 14, 1995, as Tacoma police officers Jack Nasworthy and David Lucky

were patrolling in a marked car near the intersection of South 54th and South Tacoma Way, they observed a white male "standing on the corner walking back and forth . . . attempting to contact people."[1] After a half hour or so, they saw a car with two occupants stop at the curb in such a way as to partially block traffic. The man on the corner approached the car and spoke with its occupants for a few seconds. As he did so, he rested his hands on the sill of the passenger's open window, and then reached into the car "momentarily, [for] less than a second."[2] The officers did not see anything change hands, and the man walked away as the patrol car came into view.

The car pulled back into traffic without signaling, and the officers stopped it for failing to signal and for blocking traffic. They also suspected that criminal activity was afoot.

The driver of the car was Vicki Napoleon, and the passenger was Alice Seitz. A routine license check disclosed that Napoleon was driving on a suspended license. The officers arrested Napoleon, and Nasworthy asked Seitz to step out of the car so he could search it. As Seitz complied, bringing her purse with her, Nasworthy told her not to leave.

Nasworthy then searched the car and Napoleon's purse, which Napoleon had left in the car. In the purse he found methamphetamine. When questioned, Napoleon said she had bought the methamphetamine at a nearby tavern earlier that evening, and that she planned to "party[ ] all night" to celebrate her recently completed divorce.[3] She did not say anything about Seitz being with her at that time, nor is there any other evidence to that effect.

After searching Napoleon's purse, Nasworthy asked Seitz if Seitz had any drugs. Seitz hesitated, then re-

---

[1]Report of Proceedings at 36.

[2]Report of Proceedings at 34.

[3]Report of Proceedings at 19, 24.

sponded that "she had something in her purse that she thought might be narcotics."[4] Nasworthy then looked in her purse, found methamphetamine,[5] and gave *Miranda* [*v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 695, 10 A.L.R.3d 974 (1966)] warnings for the first time.

On March 15, the State charged Seitz with unlawful possession of the methamphetamine. Seitz moved to suppress, but the trial court denied the motion. It expressly rejected the State's argument that the seizure and ensuing search were justified as incidents of Napoleon's arrest. It reasoned, however, that Seitz was detained when Nasworthy told her to get out and not go anywhere, that the detention was justified by reasonable articulable suspicion, and, apparently, that the detention of Seitz' person justified the search of her purse.

On June 7, Seitz went to trial on stipulated facts. The trial court found her guilty, and she filed this appeal.

■ The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause."[6] A defendant has the burden of showing that a search or seizure occurred, and thus that the Fourth Amendment applies.[7] If a warrantless search or seizure occurred, the State has the burden of justifying it,[8] for it is presumptively unreasonable.[9]

The parties dispute whether the officers' contact with

---

[4]Report of Proceedings at 31.

[5]This sentence is according to Nasworthy's testimony at Report of Proceedings 31 and 42. At Report of Proceedings 45, however, he testified that he asked Seitz to show him the narcotics she was referring to, and she took the methamphetamine out of her purse.

[6]U.S. Const. amend. IV.

[7]*State v. Thorn*, 129 Wn.2d 347, 354, 917 P.2d 108 (1996); *State v. Jackson*, 82 Wn. App. 594, 601-02, 918 P.2d 945 (1996), *review denied*, 131 Wn.2d 1006 (1997).

[8]*Jackson*, 82 Wn. App. at 602-03.

[9]*Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 2135, 124 L. Ed. 2d 334 (1993); *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

Seitz was a seizure of her person. They seem to assume that if there was no seizure of Seitz' person, the Fourth Amendment does not apply, and thus could not have been violated.

 A person is "seized" when he or she submits to a show of authority that would cause a reasonable person to believe that he or she is not free to leave.[10] This test was met here at least by the time Nasworthy ordered Seitz not to leave and she complied. Moreover, even if there was no seizure of Seitz' person, there was a search of Seitz' purse which, by itself, was enough to cause the Fourth Amendment to apply.

 The State argues that Napoleon's arrest, which was concededly valid, justified the search of Seitz' purse. Like the trial court, we hold it did not. The valid arrest of a driver justifies a search of the car's passenger compartment, not including locked containers.[11] The valid arrest of a passenger justifies a search of the car's passenger compartment, not including locked containers.[12] The valid arrest of either the driver or passenger justifies a search of a purse found in the car,[13] and without so holding, we assume this is true regardless of whether the purse belongs to the driver or the passenger. It is our view, however, that the valid arrest of a driver does not justify the search of a purse known to belong to a passenger, where the purse is not in the car at the time of the search, but rather is on the passenger's person and the passenger is outside the car. Thus, Napoleon's concededly valid arrest did not justify the search of Seitz' purse.

 Lastly, the State argues that the search of Seitz'

[10]*California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991); *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *Thorn*, 129 Wn.2d at 351-52; *State v. Mennegar*, 114 Wn.2d 304, 310-11, 787 P.2d 1347 (1990); *State v. Perea*, 85 Wn. App. 339, 932 P.2d 1258 (1997).

[11]*State v. Stroud*, 106 Wn.2d 144, 152, 720 P.2d 436 (1986).

[12]*State v. Cass*, 62 Wn. App. 793, 795-97, 816 P.2d 57 (1991).

[13]*State v. Fladebo*, 113 Wn.2d 388, 395, 779 P.2d 707 (1989).

purse was justified because the officers' "contact with [her] was a legitimate investigative detention."[14] An officer has a reasonable articulable suspicion when he or she observes facts and circumstances that create, in the eyes of the hypothetical reasonable person, a substantial possibility that criminal conduct has occurred or is about to occur.[15] Here, the officers saw the occupants of a car speaking with a man on the sidewalk. They did not observe drugs, money, or anything else change hands. They later found methamphetamine in Napoleon's purse, but nothing indicates Seitz knew about it or was involved with it.[16] With only these facts, the officers lacked a reasonable articulable suspicion that Seitz was involved in drug activity; thus, their detention of Seitz' person cannot be justified on the ground urged by the State.[17]

In conclusion, the State has not adequately justified the warrantless search of Seitz' purse, and the motion to suppress should have been granted.

Reversed.

HOUGHTON, C.J., and SEINFELD, J., concur.

---

[14]State's Br. at 6.

[15]*State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986).

[16]In its oral opinion, the trial court seems to have reasoned that Seitz must have been with Napoleon when Napoleon acquired the methamphetamine at a nearby tavern. The record, however, fails to support that conclusion.

[17]Although we have dealt with the merits of the State's argument, we are unable to perceive its materiality. A reasonable articulable suspicion sometimes allows for a brief detention and patdown. *Ybarra v. Illinois*, 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979). It does not allow for a more intrusive search, absent additional justification. *Sibron v. New York*, 392 U.S. 40, 65, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968). The State does not offer additional justification in this case, so even if the officers had had a reasonable articulable suspicion, that suspicion would not have justified the full-scale search of Seitz' purse. The State does not argue, and we do not rule on, whether a passenger in a vehicle that the police have a right to search incident to the driver's arrest may be briefly detained for reasons similar to those approved in *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981).