[No. 15449-1-III.   Division Three.   October 9, 1997.]
THE STATE OF WASHINGTON, *Respondent*, v. DEBORAH LEE PARKER, *Petitioner*.

THOMPSON, J. Pro Tem., dissents by separate opinion.

*Linda L. Edmiston*, for petitioner.

*Steven M. Lowe, Prosecuting Attorney*, and *Frank W. Jenny II, Deputy*, for respondent.

BROWN, J. — Is a passenger's purse left by her in an

automobile, the proper subject of a search incident to the arrest of the vehicle's driver? We accepted discretionary review of the superior court's denial of Deborah Lee Parker's motion to suppress methamphetamine found by an officer who conducted a search of her purse in that type of situation.[1] We affirm.

At approximately 10 p.m. on September 19, 1995, Trooper Ron Nordman of the Washington State Patrol stopped Timothy Thomas for speeding on State Route 395. His check of the status of Mr. Thomas' driver's license revealed it was revoked. Trooper Nordman arrested Mr. Thomas for first degree driving while license revoked, searched his person, and placed him in the back of the patrol car.

Trooper Connelly was in his vehicle traveling ahead of Trooper Nordman, when Trooper Nordman stopped Mr. Thomas. He returned to the location to assist. Trooper Connelly approached Ms. Parker, who was sitting in the front passenger seat of Mr. Thomas' vehicle. He observed an open container on the passenger side. He decided to run a breath test on Ms. Parker before he released the car to her. She voluntarily exited the vehicle, took the test and passed it.

Trooper Nordman conducted a search of the passenger compartment of Mr. Thomas' automobile after Ms. Parker got out of it. He did not begin this search until some 15 to 20 minutes after he had placed Mr. Thomas in the back of his patrol car. Trooper Nordman testified there was an open purse with a large amount of cash lying loosely on top of it in the front passenger seat. Trooper Nordman also testified the car contained a "felony forest" — there were "a large number of Christmas tree shaped air fresheners in the passenger area hanging from the vents in the passenger area, as well as in the purse in the passenger's seat . . . ." He observed a hand held scanner

---

[1]Ms. Parker's trial on the charge of possession of methamphetamine has been stayed pending this review.

under the armrest. He did not explain whether these items are typically used in the drug trade, nor did he indicate they played any role in his decision to examine the contents of the purse.

Trooper Nordman asked Ms. Parker about the money, and she answered she had received it from the purchaser of a car she had sold. When he separately asked Mr. Thomas about the money, he answered it was his, and stated he placed it on Ms. Parker's purse after the stop. Mr. Thomas later explained he knew he was driving with a revoked license; he expected the trooper would arrest him for that offense, and he placed the cash on top of the purse because he knew Ms. Parker would need bail money to obtain his release. Ms. Parker then admitted the money belonged to Mr. Thomas.

Trooper Nordman removed the purse from the car and placed it on the trunk. He asked Ms. Parker if Mr. Thomas had placed anything else in her purse. She said, "no." He proceeded to examine the contents of the purse. Inside he found a small closed coin purse. He opened it and discovered the methamphetamine in a plastic baggie.

The State charged Ms. Parker with possession of methamphetamine. She moved to suppress the evidence. Following a CrR 3.6 hearing, the trial court concluded the search was incident to a lawful arrest. It stated: "[T]he courts have been pretty clear . . . that they want to give clear authority to [search] in an automobile situation and not require the officer to go through a lot of legal analysis at the scene . . . ." The court entered the following written conclusion of law:

> 4. The search conducted by the trooper was within the scope of *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986), as it went no farther than a search of the passenger compartment of the vehicle, including unlocked containers located therein, during the time immediately subsequent to an occupant of that vehicle being arrested, handcuffed, and placed in the patrol car while the arrested person was still present in the patrol car parked at the scene.

In her appeal, Ms. Parker argues Trooper Nordman's search of her purse cannot be justified as a search incident to arrest because she was not under arrest. It is undisputed the purse was hers. Ms. Parker reasons her right of privacy should not be subsumed by Mr. Thomas' arrest. She also attacks the search as beyond the permissible "scope" of searches incident to arrest. Specifically, the small size of the coin purse that contained the contraband eliminated any possibility it contained a weapon or any evidence relating to the offense for which Mr. Thomas was arrested. Finally, Ms. Parker contends a search conducted 15 to 20 minutes after an arrest is not incident to that arrest.

Our consideration of these arguments is based upon federal and state constitutional requisites. We therefore begin with a review of cases, which set out the requirements for passenger compartment searches.

In *New York v. Belton*, 453 U.S. 454, 460, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), the Supreme Court held "that when a policeman has made a lawful custodial arrest of the occupant of the automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." The right to search the passenger compartment includes the right to search "the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." *Belton*, 453 U.S. at 460.

Even containers that cannot hold a weapon or evidence of the crime committed are proper subjects of a passenger compartment search:

> The authority to search the person incident to lawful custodial arrest, while based upon the need to disarm and discover evidence, does not depend upon what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth

Amendment: that intrusion being lawful, a search incident to the arrest requires no additional justification.

*Belton*, 453 U.S. at 461 (quoting *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973)). The Court reasoned this clear standard was necessary because without "a settled principle" citizens do not know the scope of their constitutional protection and the police do not know "the scope of [their] authority." *Belton*, 453 U.S. at 460. *See also United States v. Doward*, 41 F.3d 789, 793 n.2 (1st Cir. 1994) (the *Belton* rule extends to any container even though its appearance may foreclose possibility it holds a weapon or evidence); 3 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 7.1(c), at 453 (3d ed. 1996) (the *Belton* rule eliminates "case-by-case judgments [by the police] as to where weapons or evidence might be located" or, "whether there could be any weapons or evidence in light of the nature of the crime for which the arrest was made.").

In *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986), the Supreme Court considered the application of *Belton* in this state, in light of our constitution's protection of the privacy rights of its citizens. *Stroud* provides that our state constitution "affords individuals greater protections against warrantless searches than does the Fourth Amendment." *Stroud*, 106 Wn.2d at 148. Because of this heightened protection of privacy, the court diverged from *Belton*. While it agreed with *Belton* that the exigencies of police safety and the possible destruction of evidence exist when a vehicle occupant is arrested, it held that these exigencies do not always allow a search under the state constitution. "Rather, these exigencies must be balanced against whatever privacy interests the individual has in the articles in the car." *Stroud*, 106 Wn.2d at 151.

But the *Stroud* Court also recognized at 152 that "[t]o weigh the actual exigent circumstances against the actual privacy interests on a case-by-case basis would create too difficult a rule to allow for both effective police enforcement and also protection of individual rights." It therefore

adopted a rule that is in most part consistent with *Belton*, but excepts from such searches locked containers within the passenger compartment. *Stroud*, 106 Wn.2d at 152. Specifically,

> [d]uring the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant. The rationale for this is two-fold. First, by locking the container, the individual has shown that he or she reasonably expects the contents to remain private. Secondly, the danger that an individual either could destroy or hide evidence located within the container or grab a weapon is minimized.

*Stroud*, 106 Wn.2d at 152 (citation omitted).

With these principles in mind, we address Ms. Parker's contentions.

## PROPERTY OF A PASSENGER

First, did Trooper Nordman have authority to search Ms. Parker's purse, as part of a search of items in the vehicle's passenger compartment, incident to the arrest of the driver, Mr. Thomas? Washington case law does not include any published Supreme Court opinion on the precise issue raised here. But the courts of California, Colorado, Florida, and Wisconsin have relied upon *Belton* in reaching the conclusion the permissible scope of a search incident to arrest extends to all containers or packages inside the vehicle, regardless of their ownership. *People v. Prance*, 226 Cal. App. 3d 1525, 277 Cal. Rptr. 567 (1991); *People v. McMillon*, 892 P.2d 879 (Colo. 1995); *State v. Loftis*, 568 So. 2d 121 (Fla. Dist. Ct. App. 1990); *State v. Treutelaar*, No. 96-3249-CR (Wis. Ct. App. May 1, 1997), *review denied*, 568 N.W.2d 300 (1997). *See also United States v. Vaughan*, 718 F.2d 332 (9th Cir. 1983). In each of these

cases, the police knew or had reason to know the item was the property of the passenger. Yet the courts held the bright line rule established in *Belton* extended to all items inside the vehicles.

North Dakota reached the opposite conclusion, but on facts substantially different from those present in Ms. Parker's case. In *State v. Gilberts*, 497 N.W.2d 93 (N.D. 1993), the court suppressed evidence obtained in a search of a passenger's jacket. There, the officer testified the jacket was "draped down around [the passenger's] back" and that he was "kind of sitting on it." *Gilberts*, 497 N.W.2d at 97. The court held *Belton's* rationale did not apply to these facts. The jacket was not truly within the arrested driver's "reach" because the passenger, in effect, was wearing it when the police stopped the vehicle. And, the circumstances of the stop did not raise any suspicions that the driver had secreted contraband or a weapon in the jacket. *Gilberts*, 497 N.W.2d at 98. The Courts of Pennsylvania also have refused to approve a search of a passenger's property. *Commonwealth v. Kenoche*, 451 Pa. Super. 54, 678 A.2d 395 (1996); *Commonwealth v. Shiflet*, 543 Pa. 164, 670 A.2d 128 (1995). But those cases, too, are distinguishable from Ms. Parker's facts. In both *Kenoche* and *Shiflet*, the search was of a passenger's purse *after* the passenger had exited the automobile with the purse in her possession.

A recent decision filed by Division Two of this court concerned the same fact pattern presented in the just cited Pennsylvania cases. *State v. Seitz*, 86 Wn. App. 865, 941 P.2d 5 (1997). The court held the driver's arrest did not justify a search of the passenger's purse, "where the purse is not in the car at the time of the search, but rather is on the passenger's person and the passenger is outside the car." *Seitz*, 86 Wn. App. at 869. In dicta, the court stated it assumed the arrest of a driver justified the search of a purse found inside the car, regardless of whether the purse is the driver's or belongs to the passenger. *Seitz*, 86 Wn. App. at 869.

Here, Ms. Parker left her purse in the vehicle. She ultimately admitted Mr. Thomas placed the large amount of cash on the top of her purse. Trooper Nordman could therefore reasonably conclude the purse was not only within the reach of Mr. Thomas, but he may have placed other items, possibly weapons or contraband, inside it. Hence, the reasoning of *Belton* and *Stroud* applies. The search of Ms. Parker's purse was appropriate as a search incident to the arrest of Mr. Thomas.

## SCOPE OF SEARCH

Second, even if Officer Nordman had the authority to search the purse, did he exceed the scope of that search when he opened the coin bag inside the purse? Ms. Parker reasons the coin bag was too small to have contained either a weapon or evidence of the crime of driving with a revoked license.

*Belton* rejected this reasoning. *Belton* cited with approval the holding in *Robinson* that justification for the search is the arrest itself and "does not depend upon what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found." *Belton*, 453 U.S. at 461, quoting *Robinson*, 414 U.S. at 235. Ms. Parker makes no separate argument the state constitution places greater limits on the scope of these types of searches. Consequently, we hold Trooper Nordman acted properly when he searched the coin purse.

## IMMEDIATELY AFTER ARREST

Third, was the search here "immediately after the arrest" of Mr. Thomas so as to be regarded as a proper search incident to his arrest? The State relies upon *State v. Smith*, 119 Wn.2d 675, 683-84, 835 P.2d 1025 (1992), which held that a delay of 17 minutes between the arrest and the search was not unreasonable where the delay was not "caused by unnecessarily time-consuming activities unrelated to the securing of the suspect and the scene."

■ The *Smith* court held that a delay of 17 minutes is not per se unreasonable. Nor do we find the delay of 15 to 20 minutes in this case per se unreasonable. That time period is short enough that it cannot by itself invalidate the search. In these circumstances, it was incumbent upon Ms. Parker to offer some evidence supporting her argument the delay was caused by activities unrelated to the arrest. She has not done so, and we refuse to so hold.

The superior court's denial of Ms. Parker's motion to suppress evidence of methamphetamine found in a search of her coin purse is affirmed.

SWEENEY, C.J., concurs.

THOMPSON, J.* (dissenting) — The majority holds that a warrantless search of a passenger's purse, and closed coin purse within the purse, is justified by nothing more than the arrest of a vehicle's driver. I believe the search violated Ms. Parker's right of privacy under the Washington Constitution, and I respectfully dissent.

Warrantless searches are per se unreasonable except in a few, established circumstances. *State v. Johnson*, 128 Wn.2d 431, 446-47, 909 P.2d 293 (1996). Among the exceptions recognized under both the federal and state constitutions are searches incident to lawful arrests. *Id.* at 443-56. Under this exception, "[d]uring the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence." *State v. Stroud*, 106 Wn.2d 144, 152, 720 P.2d 436 (1986).

In concluding the search of Ms. Parker's purse was lawful, the majority relies on the bright-line rule, first articulated by the United States Supreme Court, that

---

*Judge Philip J. Thompson was a member of the Court of Appeals at the time of hearing on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

"when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). The majority apparently concludes this rule applies regardless of whether the person arrested is the same person whose property is searched.[2] The Washington Constitution protects against this sort of unjustified intrusion into the privacy of persons who arouse officers' suspicions only by their association with arrestees.

In *Stroud*, the Washington Supreme Court considered *Belton*'s applicability in light of Const. art. I, § 7, which, "unlike any provision in the federal constitution, explicitly protects the privacy rights of Washington citizens." *Stroud*, 106 Wn.2d at 148; *see Johnson*, 128 Wn.2d at 443-50. *Stroud* agreed with *Belton* that the exigencies of police safety and the possible destruction of evidence exist when a vehicle's occupant is arrested. *Stroud*, 106 Wn.2d at 151. However, the Court held that these exigencies do not always allow a search in light of the Washington Constitution's heightened protection of its citizens' privacy. "Rather, these exigencies must be balanced against whatever privacy interests the individual has in the articles in the car." *Id.* at 152.

Specifically, *Stroud* held the State's interest in searching locked containers within the passenger compartment, while promoting officer safety and preserving evidence, did not outweigh the privacy interest of the owner. It reasoned: "First, by locking the container, the individual has shown that he or she reasonably expects the contents to remain private. Secondly, the danger that an individual

---

[2]In *Belton*, the officers had arrested *all* of the occupants of the vehicle. The Supreme Court therefore had no occasion to consider the impact on privacy rights of other occupants who were not arrested. In this case, Ms. Parker was not under arrest, nor was there any cause for arresting her before the search. Authorities on which the State relies are distinguishable on this basis. *See Johnson*, 128 Wn.2d at 435; *Stroud*, 106 Wn.2d at 145; *State v. Fore*, 56 Wn. App. 339, 342, 783 P.2d 626 (1989), *review denied*, 114 Wn.2d 1011 (1990).

either could destroy or hide evidence located within the container or grab a weapon is minimized." *Id.* at 152 (citation omitted).

While *Stroud* specifically addressed locked containers, its reasoning should apply equally to Ms. Parker's purse. First, our society undoubtedly regards the contents of a purse as more personal and more private than other personal property. Like the owner of a locked container, Ms. Parker had a reasonable expectation that her purse and its contents would remain private. Second, the search of Ms. Parker's purse was not and cannot be justified by the officer's fear that anyone could destroy evidence or grab a weapon. Neither Ms. Parker nor Mr. Thomas were capable of reaching the purse when it was seized from the vehicle's passenger seat. The presence of $843 in cash, without more, did not raise a suspicion that the purse contained evidence of any crime.

As the Court noted in *United States v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), "the scope of [a] warrantless search . . . is no broader and no narrower than a magistrate could legitimately authorize by warrant." Without any particularlized suspicion that the purse contained evidence of any crime, a magistrate certainly would refuse a warrant to search it. The purse's mere presence in Mr. Thomas' car should not permit a warrantless search even more invasive than would be permitted by a magistrate.

*State v. Seitz*, 86 Wn. App. 865, 941 P.2d 5 (1997), supports suppression. In that case, the court suppressed the fruit of a search of a passenger's purse after arresting the vehicle's driver. Rather than leaving the purse in the car (as Ms. Parker did in this case), the passenger took her purse with her as she got out of the car. The court observed:

> The valid arrest of either the driver or passenger justifies a search of a purse found in the car, and without so holding, we assume this is true regardless of whether the purse belongs to the driver or the passenger. It is our view, however, that

the valid arrest of a driver does not justify the search of a purse known to belong to a passenger, where the purse is not in the car at the time of the search, but rather is on the passenger's person and the passenger is outside the car.

*Id.* at 869 (footnote omitted).

With the *Stroud* reasoning in mind, the search of Ms. Parker's purse was even less justified than was the search in *Seitz.* A passenger's expectation of privacy in a purse is similarly reasonable, regardless of whether it is on the passenger's person or on the seat of a vehicle. More importantly, there is an even greater risk that the passenger in *Seitz* could destroy evidence in or grab a weapon from her purse, because the purse was on her person and thus easily within reach. Ms. Parker's purse was not within her or Mr. Thomas' reach. The officer had no justification for searching it.

The North Dakota Supreme Court reached a similar result in *State v. Gilberts*, 497 N.W.2d 93 (N.D. 1993), in which Patrolman Smith stopped a driver for speeding, then learned the driver's license had been suspended and arrested him. Patrolman Smith asked the passenger, Mr. Gilberts, to get out so he could search the car. *Id.* at 95. As Mr. Gilberts got out of the car, Patrolman Smith picked up a jacket on the passenger's seat, intending to give it to Mr. Gilberts because it was cold outside. *Id.* The officer noticed a large amount of cash in the jacket's pocket, reached inside, and found a box containing a gram scale with cocaine residue on it. *Id.* The court held:

> When Smith reached into Gilberts's jacket pocket he knew that the jacket belonged to Gilberts, not the arrested driver . . . . Under these circumstances, we hold that the *Belton* rationale does not justify Smith's search of Gilberts's jacket. Standing alone, the driver's arrest was an inadequate ground for this intrusion upon Gilberts's constitutional rights against unreasonable search and seizure of his person and property.

*Id.* at 97.[3]

Article I, section 7 of Washington's Constitution requires suppression of the evidence here. I would reverse the superior court's order denying suppression.

Review granted at 134 Wn.2d 1024 (1998).

---

[3]The majority attempts to distinguish *Gilberts* on the ground that the passenger's jacket in that case was not within the driver's reach. But both in *Gilberts* and in this case, the driver was *outside* the car at the time of the search and certainly was unable to reach the item inside. The analysis therefore should focus, as I do here, on whether the item's owner "reasonably expects the contents to remain private." *Stroud*, 106 Wn.2d at 152.