[No. 42109-3-I.    Division One.    March 1, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. GRANT ALLEN
BOURSAW, *Appellant*.

*Michael L. Mittlestat* of *Washington Appellate Project*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *Seth Aaron Fine* and *Karen L. Rogers, Deputies*, for respondent.

WEBSTER, J. — During a valid search of the passenger compartment of an automobile incident to the lawful arrest of the driver, an officer discovered narcotics paraphernalia and requested a K-9 unit, which arrived within 10 minutes. After the dog alerted on an area beneath the dashboard ashtray, the officer handling the dog removed the ashtray and found methamphetamine. This appeal presents the single question whether the dog search and the officer's subsequent search behind the ashtray exceeded the duration or scope of a valid search of an automobile's passenger compartment incident to arrest. We affirm the trial court's ruling that the search was valid because the delay was reasonable and the area behind the ashtray is within the reach of automobile occupants.

## FACTS

On August 29, 1997, Mountlake Terrace Police Officer Brian Oswalt stopped Appellant Grant Boursaw for a traf-

fic infraction and arrested him for driving with a suspended license. After handcuffing Boursaw and placing him in the back of the patrol car, Oswalt conducted a search of the passenger compartment of Boursaw's automobile. In the unlocked glove box, Oswalt found plastic ziplock bags and several needles. Assuming these items to be narcotics paraphernalia, Oswalt called for a K-9 unit.

Officer Kelly Miller-Carman and her dog Justice arrived at the scene within ten minutes. Justice did not give a positive response during a search of the exterior of the vehicle. When Miller-Carman placed Justice inside the vehicle, he gave a positive response to an area under the center of the dashboard directly beneath the ashtray. Miller-Carman removed the ashtray and discovered a plastic bag containing a substance that tested positive for methamphetamine.

The trial court denied Boursaw's motion to suppress the methamphetamine. The court stated that "[a]n ashtray in a vehicle is designed to be removed and replaced without difficulty or damage, so I don't think removal of an ashtray would constitute dismantling of the vehicle." 1 Verbatim Report of Proceedings at 57. The court found that the search of the vehicle was reasonable because it did not exceed the scope or duration of a search incident to Boursaw's arrest.

The methamphetamine was introduced at trial, and Boursaw was convicted of one count of possession of methamphetamine with intent to manufacture or deliver. Boursaw appeals the denial of his motion to suppress.

## ANALYSIS

Unchallenged facts following a suppression hearing are not reviewed by the appellate court. *See State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Issues of law are reviewed de novo. *See State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

"A warrantless search is presumed unreasonable except in a few established and well-delineated exceptions."

*State v. Smith*, 119 Wn.2d 675, 678, 835 P.2d 1025 (1992). "A search incident to a lawful arrest is such an exception." *Id*.

The United States Supreme Court held that a police officer may make a contemporaneous search of the passenger compartment of an automobile incident to the lawful custodial arrest of an occupant of the automobile. *See New York v. Belton*, 453 U.S. 454, 460, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). The *Belton* Court defined for automobiles the principle established in *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), that the scope of a search incident to arrest extended to the area within the immediate control of an arrestee, which is defined as the area into which the arrestee might reach to grab a weapon or item of evidence. *See Belton*, 453 U.S. at 460.

The Washington Supreme Court addressed a search of the passenger compartment of an automobile incident to arrest of an occupant in *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986). The *Stroud* court held that "[d]uring the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence." *Id*. at 152.

A. The 10 Minute Delay Was Reasonable and Did Not Exceed the Duration of a Search Incident to Arrest

"At some point, a significant delay between the arrest and the search renders the search unreasonable because it is no longer contemporaneous with the arrest." *Smith*, 119 Wn.2d at 683 (citing *United States v. Chadwick*, 433 U.S. 1, 15-16, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977) (finding that a search of a footlocker conducted "more than an hour" after agents gained control of the locker and long after the arrestees were in custody was not a reasonable search incident to arrest); *United States v. Vasey*, 834 F.2d 782, 787-88 (9th Cir. 1987) (finding that a search of an automobile conducted 30-45 minutes after the arrestee was ar-

rested, handcuffed, and placed in the patrol car failed to meet the contemporaneous requirement of *Belton* and was therefore not a reasonable search incident to arrest)). In *Smith*, a 17-minute delay was reasonable where the delay was not caused by "unnecessarily time-consuming activities unrelated to the securing of the suspect and the scene" and the officer's activities during the delay were all incident to the arrest. 119 Wn.2d at 684 (the 17-minute delay was not per se unreasonable).

Relying on *Smith*, this court found that a 15-20 minute delay was not per se unreasonable. *See State v. Parker,* 88 Wn. App. 273, 282, 944 P.2d 1081 (1997), *review granted,* 134 Wn.2d 1024, 958 P.2d 315 (1998).[1] The court added that "it was incumbent upon [the arrestee] to offer some evidence supporting her argument the delay was caused by activities unrelated to the arrest." *Id.*

There are limits on the duration of a warrantless search of an automobile incident to arrest. Such a warrantless search is impermissible once the arrestee has been removed from the scene. *See State v. Boyce,* 52 Wn. App. 274, 279, 758 P.2d 1017 (1988). The *Boyce* court reasoned that there was no justification for such a search, stating:

> We reiterate that the right to search incident to an arrest is an exception to the warrant requirement and as such must be jealously and carefully drawn, and must be confined to situations involving special circumstances. In light of *Stroud* and our state constitution, we hold that once Boyce was removed from the scene, there simply were no special circumstances present that justified a warrantless vehicle search as there was no possibility that Boyce could destroy evidence or grab a weapon. [*State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986)].

---

[1]*Parker* addressed three issues: (1) whether an officer could search, incident to arrest of the driver of an automobile, the purse belonging to a passenger who was not arrested (the purse was found in the car); (2) if yes, whether the officer exceeded the scope of a search incident to arrest by searching a coin purse found inside the purse; and (3) whether the delay of 15-20 minutes between the arrest and search was unreasonable. *See* 88 Wn. App. at 279-82. The *Parker* court stated that the first question had not been ruled on by the Washington Supreme Court. *See id.* at 279. The dissenting opinion discussed only the first two issues and did not discuss whether the delay was unreasonable. *See id.* at 282-86.

*Id.* (citations omitted). In the present case, Boursaw was still at the scene when the search was performed.

Boursaw argues that Oswalt's initial search incident to arrest to look for weapons and destructible evidence secured the scene; thus, the K-9 search was a search for additional evidence—an activity not related to the arrest process—and was not a proper search incident to arrest. Oswalt's initial search of the car, Boursaw contends, removed the risk of destruction of evidence and the danger to the safety of the officers and the public. Boursaw reasons that with these dangers gone, justifications for a search incident to arrest were removed, and the officers were required to seek a warrant for the second, independent search by Justice and Miller-Carman.

The State argues that adopting Boursaw's reasoning would preclude officers from requesting assistance to perform a valid search incident to arrest. The State contends that "many instances arise where officers need assistance to perform their duties safely and properly." Resp't's Br. at 10.

The State's reasoning is persuasive. We will not preclude police officers from requesting assistance to secure the scene and perform searches incident to arrest. A single officer arresting several intoxicated and unruly individuals must be allowed to request assistance to search the arrestees and a vehicle which they occupied. But this assistance is required to secure the scene. Boursaw argues that Oswalt had *already* secured the scene when the dog search and the search behind the ashtray were performed. This case turns, therefore, on what constitutes activities related to "the securing of the suspect and the scene," and at what point is the scene sufficiently secured. *Smith*, 119 Wn.2d at 684.

Considering that *Stroud* explicitly allows a search of an automobile incident to arrest after the suspect is handcuffed and in the patrol car, *see Stroud*, 106 Wn.2d at 152, one may conclude that the scene is not secured simply by an officer's exercise of control over the arrestee. Moreover, if we

follow Boursaw's argument that the scene was secured in this case when Oswalt performed the initial search, we might preclude a second officer from immediately searching, as an added precaution, the same area already searched by her fellow officer.

. We find that because the delay was only 10 minutes and Boursaw was at the scene, the dog search and the search behind the ashtray were not beyond the duration of a search incident to arrest. The dog search and the search behind the ashtray may be viewed not as a second independent search but as a continuation of Oswalt's search. Our holding is limited to the facts of this case, and delays caused by a request for assistance might be unreasonable under differing circumstances.

B.  The Search Behind the Ashtray Was Not Beyond the Scope of a Search Incident to Arrest

The scope of a valid search incident to arrest extends to those objects in the control of the arrestee at the time of arrest. *See Smith*, 119 Wn.2d at 681 (determining that a fanny pack in the control of the suspect immediately prior to the arrest but in control of the officer for 17 minutes before the search was within the scope of a search incident to arrest). "An object is . . . within the control of an arrestee for the purposes of a search incident to an arrest as long as the object was within the arrestee's reach immediately prior to, or at the moment of, the arrest." *Id.* at 681-82.

*Stroud* explicitly allows the search of the passenger compartment of an automobile incident to the arrest of an occupant. 106 Wn.2d at 152. The Washington Supreme Court noted the rule suggested by Professor LaFave for automobiles: "a passenger compartment includes 'all space reachable without exiting the vehicle, without regard to the likelihood in the particular case that such a reaching was possible.' " *Johnson*, 128 Wn.2d at 453 (quoting 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 7.1(c), at 16-17 (2d ed. 1987)).

In *Johnson*, the court found that the search of the

sleeper compartment of a tractor-trailer that was accessible from the cab by an open portal was within the scope of a search incident to arrest. 128 Wn.2d at 457. But a search of the engine compartment of an automobile exceeds the scope of a search incident to arrest because the engine area "is not accessible without exiting the vehicle" and not "within the arrestee's immediate control." *State v. Mitzlaff*, 80 Wn. App. 184, 188, 907 P.2d 328 (1995).

█ In the present case, the area immediately behind the ashtray is within the reach of the occupants of the automobile. A driver or passenger may pull out the ashtray and reach into the area behind it without exiting the vehicle. We find that Miller-Carman's search of the area behind the ashtray did not exceed the scope of a search incident to Boursaw's arrest.

## CONCLUSION

Because the search in this case did not exceed either the duration or the scope of a valid search incident to arrest, we affirm.

COLEMAN and APPELWICK, JJ., concur.